| | |
|---|---|
| SONYA ARCHIBALD, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings, [DE-22, -30], pursuant to Fed. R. Civ. P. 12(c), and Defendant's motion for leave to file excess pages, [DE-32]. Claimant Sonya Archibald ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Defendant's motion for leave to file excess pages is allowed, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the matter remanded is to the Acting Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this order.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability and DIB and for SSI on December 13, 2018, alleging disability beginning October 12, 2018, later amended to May 1,

2019.[1] (R. 18, 283–96, 317). Both claims were denied initially and upon reconsideration. (R. 18, 108–79). A hearing before an Administrative Law Judge ("ALJ") was held on December 17, 2019, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 18, 35–76). On February 6, 2020, the ALJ issued a decision denying Claimant's request for benefits. (R. 15–34). On February 18, 2021, the Appeals Council denied Claimant's request for review. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*,

---

[1] Claimant previously filed claims in July 2016 that were denied on October 11, 2018, (R. 80–101), and the current decision does not readjudicate the prior unfavorable decision; thus, the period at issue in this case is May 1, 2019 through February 6, 2020, (R. 19).

2

76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based

3

on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges (1) the ALJ erred by failing to properly evaluate whether Claimant's impairments met Listing 1.04, (2) the ALJ erred by failing to apply the correct legal standard when evaluating Claimant's fibromyalgia, (3) the structure of the Social Security Administration is not constitutionally valid, and (4) the ALJ's appointment violates the Appointments Clause. Pl.'s Mem. [DE-23] at 5–26.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since May 1, 2019, the alleged onset date. (R. 21). Next, the ALJ determined Claimant had the severe impairments of osteoarthritis, degenerative disc disease, obesity, diabetes mellitus, fibromyalgia, hypertension, inflammatory bowel disease, Chiari I malformation, vertigo, major depressive disorder, and anxiety disorder. *Id.* The ALJ also determined Claimant's thyroid disorder and carpal tunnel syndrome were non-severe impairments. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21–23).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] with the following limitations:

she can never climb ladders/ropes/scaffolds or be exposed to hazards such as

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

dangerous machinery and unprotected heights; she can occasionally balance; she
can frequently stoop, kneel, crouch, and crawl; she can occasionally reach overhead
with both upper extremities; she can frequently handle and finger with both upper
extremities; she must avoid concentrated exposure to extreme cold; she can
understand, remember, and carry out simple instructions, consistent with a
reasoning level of 2 or 3 in the DOT; she can sustain the concentration, persistence
and pace necessary to carry out those simple instructions over an 8-hour workday,
in 2-hour increments of time, at a non-production pace; she can have occasional
interaction with the general public; and she can work in a low stress environment,
which is specifically defined to mean no fast paced production, only simple work-
related decisions, and few or no changes in the work environment.

(R. 23–27). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence of record. (R. 24).

At step four, the ALJ concluded Claimant was unable to perform her past relevant work as a teacher aid, school bus driver, cashier, or electronics inspector. (R. 27). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 27–28).

## V. DISCUSSION

### A. Step Three – Listing 1.04A

Claimant contends the ALJ erred by finding her degenerative disc disease of the lumbar spine with bilateral foraminal stenosis does not meet Listing 1.04A. Pl.'s Mem. [DE-23] at 5–9. Defendant contends that the ALJ's conclusion that Claimant's impairment did not meet the listing requirements is supported by the record. Def.'s Mem. [DE-31] at 26–28.

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment

5

meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Even if an impairment does not meet the listing criteria, it may still satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5); SSR 17-2p, 2017 WL 1105349 (Mar. 27, 2017). The burden of demonstrating that an impairment meets or equals a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *Shoulars v. Astrue*, 671 F. Supp.2d 801, 813 (E.D.N.C. 2009).

When "there is at least conflicting evidence in the record" as to whether a claimant satisfies a listing, the ALJ must explain her determination that the claimant's impairment does not meet or exceed the listing. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). The ALJ cannot "summarily conclude" that a listing is not satisfied because "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.* For example, in *Radford* the record showed "limited motion of the spine on at least four occasions, positive straight leg raises at least five times, and sensory reflex loss on at least three occasions," but it also showed "no weakness, sensory loss, or limitation of motion during some examinations." *Id.* at 296. The court held that there was conflicting evidence requiring a detailed explanation from the ALJ. *Id.*

To satisfy Listing 1.04A, a claimant must show a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord" with the following:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

6

20 C.F.R. § 404, subpt. P, app. 1, § 1.04A. The claimant "need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of his condition." *Radford*, 734 F.3d at 294. "Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity." *Id.* The Commissioner has recognized that "abnormal physical findings may be intermittent," but a claimant may nonetheless prove a chronic condition by showing that he experienced the symptoms "over a period of time," as evidenced by "a record of ongoing management and evaluation." *Id.* (quoting 20 C.F.R. pt. 404, subpt P, app. 1, § 1.00D). "To require proximity of findings would read a new requirement into the listing that is unsupported by the text, structure, medical practice, or common sense." *Id.*

At step three the ALJ determined Claimant did not have an impairment or combination of impairments that met or equaled a listing and, in reaching that conclusion, summarily stated that several specific listings were considered, including Listing 1.04, but did not provide a detailed explanation of why those listings were not satisfied. (R. 22).

Claimant contends that the May 1, 2019 MRI demonstrates moderate broad-based disc bulge and facet hypertrophy at L4-5 causing mild central and moderate bilateral foraminal stenosis, (R. 653–54), which is evidence of nerve root compression; on May 5, Claimant presented with back pain and on examination demonstrated tenderness to palpation over L3-5, decreased range of motion in the lower back due to pain, and a positive straight leg raise test on the left side, (R. 653, 656); on June 28, Claimant continued to complain of back pain and her providers indicated her symptoms were concerning for worsening nerve impingement and the need for decompression surgery, (R. 895, 904); on August 14, Claimant demonstrated reduced strength of 4/5 in the lower extremities and mildly decreased positive pinprick, temperature, and vibration in the distal lower

7

extremities, (R. 683, 687); and on August 20, Claimant demonstrated limited range of motion of the back, (R. 1044). Pl.'s Mem. [DE-23] at 5–6.

Defendant takes issue only with Claimant's assertion that the May 1, 2019 MRI results demonstrating moderate bilateral foraminal stenosis, (R. 653–54), also characterized as "bilateral foraminal narrowing," (R. 687), demonstrates the requisite nerve root compression. Def.'s Mem. [DE-31] at 27. Defendant contends that the records cited by the ALJ, specifically excerpts from an August 14, 2019 neurology consultation with Dr. Gilani, (R. 687, 690), explain why the MRI findings do not demonstrate nerve root compression. Def.'s Mem. [DE-31] at 27. Defendant points to Dr. Gilani's statement, after summarizing the MRI results, that "[i]t seems worth performing electrodiagnostic study to assess for peripheral neuropathy, myopathy and lumbosacral nerve root disease. I would like to point [out] that radiculopathies can be compressive or noncompressive and MRI studies may not provide information about noncompressive radiculitis." *Id.* (citing R. 689). Defendant argues the implication from this statement is that there was no indication of compression from the MRI and also cites the ALJ's notation that the electrodiagnostic study was normal, (R. 25, 690). Def.'s Mem. [DE-31] at 28.

The ALJ did not provide the reasoning offered by Defendant. The ALJ, in discussing the records cited by Defendant, noted Claimant's antalgic gait and decreased sensation and strength, but made no mention of Dr. Gilani's statement or the inference suggested by Defendant. (R. 25). The court cannot substitute Defendant's explanation for one not given by the ALJ. *See Cumbee v. Kijakazi*, No. 7:20-CV-59-FL, 2021 WL 4447625, at *4 (E.D.N.C. Sept. 28, 2021) ("[H]owever meritorious [the Commissioner's suggested] rationale might be, acceptance of such an unclearly stated but ostensibly implicit rationale would constitute 'post-hoc justification.'") (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 109 (4th Cir. 2020); *Radford*, 734 F.3d at 296); *see also*

*Cowen v. Berryhill*, No. CIV-17-233-STE, 2018 WL 577222, at *4, n.5 (W.D. Okla. Jan. 26, 2018) (declining to consider as *post hoc* rationalization the Commissioner's argument, not made by the ALJ, that evidence of foraminal stenosis was insufficient to establish nerve root compression, and noting that there was authority to support both positions that foraminal narrowing is and is not *per se* evidence of nerve root compression, making it an issue for the ALJ to determine, if necessary, with the aid of a consultative examination or the services of a medical expert).

Furthermore, other implications favorable to Claimant could arguably be drawn from the record. For example, the treatment note memorializing the results of the May 1, 2019 MRI, states that at L1-2, L2-3, and L5-S1 there was no focal disc herniation, nerve root or cord compression, but that at L3-4 there was mild central and bilateral foraminal narrowing with no disc herniation and at L4-5 there was moderate bilateral foraminal narrowing with facet hypertrophy, the implication being that there was nerve root or cord compression at L3-4 and L4-5, because the record explicitly stated there was no such compression at the other levels. (R. 687–88). Dr. Gilani stated that he "personally reviewed MRI of the cervical and lumbar spine and completely agree with radiological reading of the studies copied below." (R. 687). As another example, Dr. Russell stated that Claimant's "symptoms are concerning for worsening nerve impingement and the need for decompression surgery," which could be read to imply that Claimant had existing nerve impingement that was worsening. (R. 894). While evidence of "mild foraminal narrowing" alone may not necessarily demonstrate nerve root compression, here there was moderate narrowing, (R. 688), and other evidence discussed above that could further indicate nerve root involvement; thus, the ALJ's failure to specifically address this evidence that potentially conflicts with the ALJ's determination frustrates meaningful review. *See McPherson v. Kijakazi*, No. 1:20-CV-710, 2021 WL 5889988, at *9 (M.D.N.C. Dec. 13, 2021) (concluding that despite the fact that "a finding of

9

mild neural foraminal stenosis standing alone, without further indication of nerve root involvement, likely does not suffice to demonstrate nerve root compression," and did not present a "compelling case of nerve root compression," such evidence potentially conflicted with the ALJ's finding that Listing 1.04 was not met and required remand for further consideration), *report and recommendation adopted,* 2022 WL 1441226 (M.D.N.C. Jan. 11, 2022); *Elderkin v. Berryhill*, No. 3:17 CV 90 (JGM), 2018 WL 704137, at *9 (D. Conn. Feb. 5, 2018) (finding the ALJ's failure to consider Listing 1.04 required remand where MRI evidence revealed "'cervical spondylosis from C3 to T1, with moderate spinal stenosis at the C6-C7 level[,]' with relatively stenotic neural foramina at C3 through C7," and a "hemangioma at C6 vertebral body," which arguably could satisfy the requirement of nerve root compression, and the claimant was "owed a discussion of how the evidence failed to establish that she met Listing 1.04A") (citation omitted); *Palmer v. Colvin*, No. CIV-12-893-W, 2013 WL 1704985, at *2 (W.D. Okla. Mar. 29, 2013) ("[T]he ALJ may have had legitimate reasons for finding that Plaintiff's 'foraminal narrowing' did not constitute nerve root compression; however, his failure to provide this court with an explanation makes it impossible to determine whether appropriate legal principles were followed."), *report and recommendation adopted,* 2013 WL 1716477 (W.D. Okla. Apr. 19, 2013).

Resolving material ambiguities in the record is the role of the ALJ and not for Defendant or the court to undertake in the first instance. *Radford*, 734 F.3d at 296. Claimant has cited evidence in the record that could satisfy each of the requirements of Listing 1.04A, and the ALJ erred by failing to explain in detail, either at step three or in the RFC discussion, why Claimant's lumbar spine impairment did not meet the listing. *Id.* Accordingly, because the court cannot follow the ALJ's reasoning in finding that Claimant's lumbar impairment did not meet Listing

10

1.04A, where there is conflicting evidence in the record on the issue, this matter must be remanded for further consideration.

The court declines to address Claimant's remaining assertions of error. However, on remand the ALJ should ensure that Claimant's fibromyalgia, which the ALJ found to be a severe impairment, (R. 21), is sufficiently considered in accordance with *Arakas v. Comm'r, Soc. Sec. Admin.* and SSR 12-2p.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-22] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-30] is denied, and the matter is REMANDED to the Acting Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this order.

SO ORDERED, this the 26th day of September, 2022.

Robert B. Jones, Jr.
United States Magistrate Judge

11